[Crim. No. 1616.   Third Appellate District.—May 3, 1938.]

THE PEOPLE, Respondent, v. WILLARD SIMPSON et al., Appellants.

John R. Cronin for Appellants.

U. S. Webb, Attorney-General, Gordon S. Hughes, Deputy Attorney-General, F. C. Clowdsley, District Attorney, and Maxwell M. Willens, Deputy District Attorney, for Respondent.

PLUMMER, J.—A rehearing was granted in this cause in order that the testimony might be more fully analyzed, and also in order that we might reconsider the effect upon the verdict resulting from the admission of improper testimony, and the refusal to give an instruction to the jury which would have corrected the error in the admission of testimony.

The defendants were tried and found guilty of stealing and carrying away twelve magnetos of the alleged value of $300, lawful money of the United States, the personal property of the California Tractor and Equipment Company. The jury found that the defendants were guilty of a felony, in that the value of the property was over the sum of $200. Upon this appeal the value of the property is seriously contended, it being urged that its value is simply shown to be problematical, by reason of the fact that no real examination was made by any of the witnesses as to the mechanical condition of the magnetos.

The magnetos in question were all taken from second-hand, or what is more commonly called "used tractors". Just how old the tractors involved are or were is not shown by the testimony, nor is there any testimony showing or indicating the use to which any of the tractors had been subjected. Some of them were in the possession of the Equipment Company for over a year. The entire number of tractors from which the magnetos were taken had been purchased by the Equipment Company as used tractors.

The testimony of all of the witnesses, whether for the prosecution or for the defense, rested simply upon an inspec-

tion of the outward appearance of the magnetos, and not upon an examination of their mechanical condition.

The first witness who testified as to the value of the magnetos was Mr. Rohn, the owner and proprietor of the Equipment Company. The questions and answers indicate that the witness was not really giving the market value of the different magnetos. The questions and answers in relation thereto are as follows:

"Q. Now, Mr. Rohn, what was the market value of the magnetos taken from your place of business on November 24, 1937, in San Joaquin County? A. Why, the value of the magnetos was from $25. to $35. apiece."

His testimony is further to the effect that the magnetos came with the tractors, and it shows that he had neither bought nor sold magnetos, nor did he pretend to give the age of the magnetos, or how long they had been in use; they simply came with the used tractors as a part of the equipment.

The next witness called by the prosecution was I. G. Boice. This witness testified that he had a shop of his own in Stockton; that he occasionally handled magnetos, that is, that he made repairs upon magnetos; that he had handled magnetos at different times for approximately ten years. This witness testified that he was familiar with the market price of magnetos on tractors; that they repaired magnetos; were not in the business of selling magnetos, but did sell a magneto occasionally. His testimony was to the effect that the magnetos ranged anywhere from $25 to $35 apiece. The following questions and answers indicate that the witness was simply giving an estimate:

"Q. Five of them at $30.00? A. Between $30.00 and $35.00; it is pretty hard to estimate the value. Q. Yes; and the value is about $35.00? A. Two at $35.00; that is only approximately. Q. That is your best judgment as to the market value? A. That is my opinion; a close-up magneto it is hard to judge."

On cross-examination the witness further testified:

"Q. Mr. Boice, you say it was approximately? A. Approximately. Q. In order to get the real ·test you would practically have to take them apart and see how the points were? A. That is approximate, judging that the magnetos

are in working condition. Q. In working condition? A. In working condition."

Further questions and answers related to what would be necessary in repairing used magnetos.

A witness by the name of Cooper, called by the prosecution, stated that he worked for the Auto Electric Company; that the Electric Company both sell and service magnetos; that he was familiar with the market value of magnetos on Thanksgiving Day, 1937. This witness testified that the market value of magnetos was from $20 to $35 apiece. On cross-examination he testified as follows:

"Q. Mr. Cooper, are you a mechanic? A. No, not at present. Q. Do you know anything as to the condition of these magnetos from their outward appearance? A. No, that is impossible. Q. Isn't it a fact that in order to tell the value of a magneto you would have to open it and take it apart and see how the points and coils are? A. Yes, you would to get a real accurate estimate of it. Q. Your estimate is not a real accurate estimate of it, but an approximation, isn't that right? A. Considering the magnetos are in working condition? Q. Yes. You don't know anything definitely as to the value particularly of any one of these magnetos, do you? A. The actual value? No, I may not."

A witness by the name of Grissel, called by the prosecution, testified that he was the proprietor of the Cletrac Tractor Company; that he had been in the tractor business about nineteen years; that he was familiar with the values of magnetos. This witness estimated the value of the magnetos as around $35 to $40 apiece. The testimony does not disclose as to whether he was basing his estimate of values upon market value or upon the specific magnetos in question. On cross-examination he further testified that he could not tell from looking at the magnetos whether they were in practical working condition or not, and that he did not know whether they were or were not in working condition. As to actual value, the witness testified that it would be necessary to open and examine magnetos. Nothing appears in this witness' testimony as to whether he did or did not take into consideration the use to which the magnetos had been subjected, and how long they had been a part of the equipment of the used tractors from which they were taken.

A witness by the name of Guyman, called by the prosecution, testified that he had been repairing magnetos off and on for some ten years; that he was familiar with the market value of magnetos. He further stated, on used magnetos he would not be able to give an approximate value without knowing their condition. If they were on operating equipment, and running, he would put the value in the neighborhood of $30 or $40 apiece.

One of the witnesses called by the prosecution testified that the value was more or less of a guess, was more or less of a gamble.

A witness by the name of Stockwell, called by the defense, testified that he was familiar with the market value of magnetos; that he was in charge of the electrical equipment of the Acme Auto Wrecking Company; that he was repairing and dealing in magnetos; that the value of the magnetos in question would run from $15 to $17.50 each; that the market value of the Bosch magnetos would be about $17.50 each. This witness testified that he had bought and sold magnetos, but his answer as to the price which he paid for them was stricken out. The witness further testified that the Bosch magnetos would sell for about $17.50 each.

A witness by the name of Weaver, called for the defense, testified that he is an automotive electrician; that he worked for the Auto Electrical Supply Company; that he was familiar with the market value of magnetos; that they were worth from $10 to $17.50 apiece, depending upon the manufacture; that no one could tell the actual value of a magneto without taking it apart and inspecting its mechanical condition; that frequently the cost of repairing a magneto was greater than the value of the magneto itself; that his company had on hand some seventy-five or eighty magnetos which were adapted for use on tractors and automobiles. This witness appears to be the only one who testified to having on hand a stock of magnetos, and the market value thereof. This witness testified that the fair market value of the Boschs would be from $15 to $20 apiece; the American magnetos would be of the market value of about $12.50 apiece.

A witness by the name of Newmaster, on behalf of the defense, testified that he was familiar with the market value of magnetos, and fixed the price on used ones; that he had had to

do with magnetos for eight years. This witness testified that the values ranged from $12.50 to $17.50 apiece.

A witness by the name of Sweney, called by the defense, testified that he had been in the electrical repair business about twenty-one years; that he had been repairing magnetos for about fifteen years; was familiar with the market value of magnetos; and that the values of the magnetos in question would run from $10 to $17.50 each; some of them might be worth $20 each.

As we have said, the testimony absolutely fails to disclose the mechanical condition of the magnetos; that the values placed thereon are simply estimates, based upon the outward appearance, and not upon actual knowledge. We think one of the witnesses accurately stated the situation when he said, the question of value was a guess, or a gamble.

■ Over the objection of the defendants the prosecution was permitted to introduce evidence that it would cost $7.50 to replace the magnetos upon the tractors from which they were taken, aggregating the sum of $90. In argument to the jury the prosecution contended that this $90 might be taken into consideration in determining the market value of the magnetos. The admission of this testimony was clearly erroneous, and as presented to the jury as a basis for determining the market value of the magnetos is certainly prejudicial.

Section 484 of the Penal Code, relating to market value, reads as follows:

"In determining the market value of the property obtained for the purposes of this section, the reasonable and fair market value shall be the test."

The defendants requested of the court the following instruction:

"Testimony has been admitted herein over the objection of defendants relative to the cost of reinstalling the magnetos in question, on the tractors or other equipment on which they were originally placed. You are instructed that you are to disregard said testimony, as the only test of grand or petty theft herein is confined in that portion of section 484 of the Penal Code, reading as follows: "In determining the value of the property obtained, for the purpose of this section, the reasonable and fair market value shall be the test.' "

The giving of this instruction was refused. In view of the testimony relative to the cost of reinstalling the magnetos,

admitted over the objection of the defendants, the requested instruction should have been given in order that the jury might not take into consideration the cost of reinstalling any of the magnetos. It is not a question of what an owner would have to pay for reinstalling a magneto; it is the market value thereof which is to be considered by the jury in determining whether the offense is a felony or only a misdemeanor.

In the case of *People* v. *Gilbert*, 163 Pac. 511 [128 N. W. 756, Ann. Cas. 1912A, 894], appears a very clear statement of the rule relative to values:

"The rule is well settled that the special value to the owner of property stolen is not the proper basis for proving its value. If the articles have a market value at the time and place of larceny, that is the true basis (1 McClain Crim. Law, par. 585.) 'By value is meant, not what the thing is worth to the owner, but the price that it would bring in open market.' (18 Am. & Eng. Ency. [2d ed.] 467, citing *State* v. *Doepke*, 68 Mo. 208 [30 Am. Rep. 785].) There was evidence of the market value of this property."

■ In view of the admission of testimony as to the cost of reinstalling the magnetos which should have been excluded, the refusal of the court to give the requested instruction advising the jury not to consider such testimony in fixing values, and further, in view of the fact that second-hand magnetos were involved in this action, with no testimony introduced as to their mechanical condition or how long they had been used, or the kind of uses to which they had been subjected, and the fact that the different witnesses were only testifying from the outward appearance of the magnetos and giving approximate values, we think it clearly appears that the jury had no substantial basis upon which to fix the value of the property, or find the defendants guilty of a felony. This, however, does not lead to a reversal of the case, or the sending of it back for retrial and adding additional costs to the county.

The defendants admitted the taking of the magnetos, and thereby admitted that they were guilty of petty theft. The jury has found the defendants guilty of stealing, but we think improperly fixed the degree as grand theft instead of petty theft.

Under the decision of the Supreme Court in the case of *People* v. *Kelley*, 208 Cal. 387 [281 Pac. 609], and likewise in *People* v. *Ciani*, 104 Cal. App. 596 [286 Pac. 459], we are

authorized to reduce the degree of the offense and fix the same only as petty theft, and thus avoid the necessity of a retrial.

Following the procedure of the two cases just referred to, the verdict is modified and the judgment is modified so as to find the defendant guilty only of petty theft, and the cause is remanded to the trial court with directions to enter judgment against the defendants, finding them, and both of them, guilty of petty theft, and to thereupon pronounce judgment upon them, and each of them, as prescribed by law.

Pullen, P. J., and Thompson, J., concurred.

A petition by respondent to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on June 2, 1938.