Filed 9/25/14  P. v. Roberts CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>JOHN D. ROBERTS et al.,<br><br>    Defendants and Appellants. | 2d Crim. No. B244723<br>(Super. Ct. No. MA055365)<br>(Los Angeles County) |

John D. Roberts and Jack M. Garcia appeal the judgments entered after a jury convicted them of grand theft of personal property (Pen. Code,[1] § 487, subd. (a)). Appellants were found not guilty of vandalism (§ 594, subd. (a)) and receiving stolen property (§ 496, subd. (a)).  The trial court reduced Roberts' conviction to a misdemeanor (§ 17, subd. (b)) and placed him on 36 months of summary probation with the condition that he serve five days in county jail.  Garcia was sentenced to three years in county jail.

Appellants contend the evidence of the value of the property they were alleged to have stolen is insufficient to support their convictions of grand theft.  They also claim substantial evidence supported their good faith belief that the property had been abandoned and, as a consequence, the court prejudicially erred in refusing to give their requested instructions on mistake of fact (CALCRIM No. 3406) and claim of right

---

[1] All further undesignated statutory references are to the Penal Code.

(CALCRIM No. 1863). Both claims have merit. Accordingly, we shall reverse the judgments and remand for further proceedings.**2**

STATEMENT OF FACTS

Los Angeles Deputy Sheriff Jeremiah McNutt was on patrol in Lancaster one afternoon when he saw a Lincoln Towncar parked in front of a vacant house with a "for sale" sign. Roberts was standing on the curb and attempting to load "a large, bulky object" into the front seat of the vehicle. Garcia was sitting in the back seat. Roberts "definitely was having a hard time" with the object, which appeared to be heavy and too large to fit in the vehicle.

Deputy McNutt got out of his vehicle and approached Roberts. Roberts saw the deputy and dropped the object on the curb. On closer inspection, Deputy McNutt identified the object as a "smashed" air conditioner (AC) coil. In response to questioning, Roberts said he and Garcia were at home that afternoon when two men walked by and said they should "check out" a piece of trash someone had left on the curb down the street. Roberts did not know what the object was or where it had come from. He decided to take it because he thought it had been abandoned as trash. He was planning to either fix it or give it to someone who could use it. Garcia also said he did not know what the object was and believed it had been left on the curb as trash. Deputy McNutt later verified that appellants lived together in a house down the street from where the AC coil was taken.

It had recently rained and Deputy McNutt saw what he believed was a trail or tracks in the grass leading to the back yard of the vacant house. The deputy concluded the tracks were footprints, but was unable to tell when they had been made. He did not take photographs or take impressions of the tracks, and did not notice whether appellants' shoes were wet or muddy. The deputy followed the tracks to the back yard and discovered that the house's AC unit had been "filleted open" and was missing its coil, fan,

---

**2** In light of our reversal, we need not address appellants' additional claims of error.

2

and compressor. Deputy McNutt believed the vandalism was relatively recent because no dust had settled inside the AC unit.

Deputy McNutt searched Roberts' vehicle and found a standard tool kit in the trunk. There was no fan, compressor, or other parts that might have been taken from the AC unit. There was also no reciprocating saw, and removing an AC coil without such a saw would be difficult and time consuming. The deputy nevertheless believed that appellants vandalized the AC unit and removed the coil with the tools from Roberts' vehicle. He also believed that Roberts, who was 58 years old at the time and walks with a limp, would have had a difficult time moving the coil by himself.

Appellants were given *Miranda*[3] advisements and placed in separate patrol cars. Deputy McNutt asked Roberts if he knew the object was an AC coil and Roberts replied, "I'm an electrical engineer, I would know better than you what it is, wouldn't I?" Garcia also knew the object was an AC coil. When interviewed separately, appellants said they had planned to take the coil to a recycling yard and reiterated they had found it on the curb.

Alfreda Moore's mother owned the vacant house where the AC unit was vandalized. The house "was in perfect condition" when Moore inspected it in early February. After learning of the vandalism, Moore went to the house and discovered that the heater and sink faucets were also missing.

Deputy McNutt testified that vandalism and theft of AC units was common in the neighborhood where the incident took place. It is a common method for thieves to steal recyclable items from several houses at a time and return with a truck to collect them. An AC coil could be recycled for $60 to $100. A coil that had been left on a curb would not be there very long because there were people who drove through the neighborhoods all day looking for recyclable items. Deputy McNutt testified it was "very reasonable" to believe that a recycler who found an AC coil sitting on a curb would pick

---

**3** *Miranda v. Arizona* (1966) 384 U.S. 436.

it up and recycle it. He did not believe this would occur, however, unless someone left the coil on the curb after stealing it from an AC unit on the property.

DISCUSSION

*Insufficient Evidence of Grand Theft*

Appellants contend their convictions of grand theft must be reversed because the evidence is insufficient to support the findings that they stole property worth more than $950. We agree.

In reviewing claims of insufficient evidence, we examine the entire record and draw all reasonable inferences therefrom in favor of the judgment to determine whether there is reasonable and credible evidence from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. (*People v. Streeter* (2012) 54 Cal.4th 205, 241.) We do not reweigh the evidence or reassess the credibility of witnesses. (*People v. Albillar* (2010) 51 Cal.4th 47, 60.) We accept the logical inferences that the jury might have drawn from the evidence although we would have concluded otherwise. (*Streeter*, at p. 241.)

To convict appellants of grand theft, the prosecution had to prove beyond a reasonable doubt that appellants unlawfully took personal property with a "reasonable and fair market value" in excess of $950. (§§ 484, subd. (a), 487, subd. (a).) As the jury was instructed, "[The f]air market value is the price a reasonable buyer and seller would agree on if the buyer wanted to buy the property and the seller wanted to sell it, but neither was under an urgent need to buy or sell." (CALCRIM No. 1801, italics omitted.) Fair market value may be established by expert testimony. (*People v. Lizarraga* (1954) 122 Cal.App.2d 436, 438 (*Lizarraga*).)

The fair market value of a stolen item is measured at the time and place of its theft. (*People v. Pena* (1977) 68 Cal.App.3d 100, 102, fn. 1 (*Pena*).) It does not include the replacement cost or any other value to any particular individual. (*Lizarraga, supra*, 122 Cal.App.2d at p. 438; *People v. Latham* (1941) 43 Cal.App.2d 35, 39; *People v. Simpson* (1938) 26 Cal.App.2d 223, 228-229 (*Simpson*).)

4

*Simpson* is on point. The defendant in that case was convicted of stealing magnetos from 12 tractors. In reversing, the Court of Appeal concluded among other things that the trial court had erred in allowing evidence of the costs of reinstalling the magnetos. The court reasoned: "It is not a question of what an owner would have to pay for reinstalling a magneto; it is the market value thereof which is to be considered by the jury in determining whether the offense is a felony or only a misdemeanor." (*Simpson, supra,* 26 Cal.App.2d at p. 229.)

Here, the prosecution purported to establish the fair market value of the AC coil through the testimony of expert witness Sean Cooley, a seller of AC units. Cooley first testified that from "a homeowner's perspective," the cost of an AC coil would be "around 800 bucks" for "[l]abor, cost of the actual item[] itself. Things like that. It can vary based on the contractor." Garcia's trial counsel objected that this estimate included replacement costs, and the court sustained the objection. Cooley then testified that a homeowner could not purchase an AC coil directly, but could purchase one through a contractor for about $600.

When presented with a hypothetical in which "[y]ou have an AC unit that's been filleted open, the wires cut, and the AC coil removed," Cooley opined that a replacement of the AC unit would be recommended. Cooley then testified that he had obtained bids from two local companies to replace Moore's entire AC unit. One company gave an estimate of $1,955, while the other gave an estimate of $2,650. Both bids included materials, tax, and labor.

This evidence is insufficient to establish that the AC coil appellants were charged with stealing had a fair market value in excess of $950. As *Simpson* makes clear, the fair market value of the coil does not include reinstallation costs. (*Simpson, supra*, 26 Cal.App.2d at p. 229.) Appellants were acquitted of vandalism, so the costs of replacing the entire AC unit are excluded.

When Cooley's estimated costs of reinstalling the AC coil and replacing the entire AC unit are eliminated, we are left with his testimony that the coil had an estimated fair market value of $600. This value is below that required for a grand theft conviction.

5

But even this figure is too high, for it represents the estimated cost of a *new* AC coil.  As we have noted, the fair market value of the coil is measured at the time and place of its theft.  (*Pena, supra*, 68 Cal.App.3d at p. 102, fn. 1.)  Appellants were convicted of stealing a severely damaged coil that, according to Deputy McNutt, was worth from $60 to $100.  In light of this evidence, appellants' convictions of grand theft cannot stand.

The People contend that in lieu of reversal, we can simply modify the judgments to reflect that appellants were convicted of the lesser included offense of petty theft.  (*People v. Bailey* (2012) 54 Cal.4th 740, 748.)  As we shall explain, reversal is compelled due to instructional error.  In light of our finding of insufficient evidence, however, the charges on remand are limited to the lesser offense of petty theft.

<u>*Instructional Error*</u>

Appellants contend the court prejudicially erred in refusing to instruct the jury on the defenses of mistake of fact (CALCRIM No. 3406)[4] and claim of right (CALCRIM No. 1863).[5]  Again, we agree.

---

[4] CALCRIM No. 3406 states:  "The defendant is not guilty of <insert crime[s]> if (he/she) did not have the intent or mental state required to commit the crime because (he/she) [reasonably] did not know a fact or [reasonably and] mistakenly believed a fact.

If the defendant's conduct would have been lawful under the facts as (he/she) [reasonably] believed them to be, (he/she) did not commit <insert crime[s]>.

If you find that the defendant believed that <insert alleged mistaken facts> [and if you find that belief was reasonable], (he/she) did not have the specific intent or mental state required for <insert crime[s]>.

If you have a reasonable doubt about whether the defendant had the specific intent or mental state required for <insert crime[s]>, you must find (him/her) not guilty of (that crime/those crimes)."

[5] CALCRIM No. 1863 states:  "If the defendant obtained property under a claim of right, (he/she) did not have the intent required for the crime of (theft/ [or] robbery).

The defendant obtained property under a claim of right if (he/she) believed in good faith that (he/she) had a right to the specific property or a specific amount of money, and (he/she) openly took it.

In deciding whether the defendant believed that (he/she) had a right to the property and whether (he/she) held that belief in good faith, consider all the facts known to (him/her) at the time (he/she) obtained the property, along with all the other evidence in the case.  The defendant may hold a belief in good faith even if the belief is mistaken or

6

Deputy McNutt testified that appellants told him they found the AC coil on the curb and thought it had been abandoned as trash. Based on that evidence, appellants requested that the jury be instructed with CALCRIM No. 3406 (mistake of fact). Roberts' attorney asserted the instruction on mistake of fact "is made exactly for circumstances and facts like this [case]." The trial court refused to instruct on mistake of fact, reasoning that "the only evidence that came in about this were the statements allegedly made by [appellants], which are contradictory. [¶] One time they say it's trash, then they admit they know it's an AC coil -- at least one of them does. [¶] I don't believe substantial evidence to support the defense has been raised." Appellants' further objections were overruled.

Appellants then requested that the jury be instructed on claim of right pursuant to CALCRIM No. 1863. Roberts' attorney offered that "if [appellants] truly believed, in good faith, that they had the right to such property because it was just sitting on the curb and discarded as trash, then this is an instruction that would apply to that." The court replied: "The only evidence here of their statements is, number one, they thought it was trash. [¶] Then one who says, finally, no, I knew it was an AC coil. [¶] The other one argued with the deputy, you know what it is? I know what it is. I'm an electrical engineer, I should know more. [¶] If I'm not mistaken, that was the testimony that came out, right? . . . [¶] Therefore, there's not substantial evidence as to that claim of right." When appellants continued to press for the claim of right instruction, the court said, "[w]e're done" and added, "You can't use evidence, I thought it was trash, then later,

unreasonable. But if the defendant was aware of facts that made that belief completely unreasonable, you may conclude that the belief was not held in good faith.
    [The claim-of-right defense does not apply if the defendant attempted to conceal the taking at the time it occurred or after the taking was discovered.]
    [The claim-of-right defense does not apply to offset or pay claims against the property owner of an undetermined or disputed amount.]
    [The claim-of-right defense does not apply if the claim arose from an activity commonly known to be illegal or known by the defendant to be illegal.]
    If you have a reasonable doubt about whether the defendant had the intent required for (theft/ [or] robbery), you must find (him/her) not guilty of <insert specific theft crime>."

I knew it was an AC coil, to bolster the defense of claim of right. It doesn't fly." Counsel's further objections were once again overruled.

The court erred in refusing to give the requested instructions. "An essential element of any theft crime is the specific intent to permanently deprive the owner of his or her property. [Citation.]" (*People v. Williams* (2009) 176 Cal.App.4th 1521, 1526.) The defenses of mistake of fact and claim of right each negate this element of the offense. (See, e.g., *In re Jennings* (2004) 34 Cal.4th 254, 277 [mistake of fact]; *People v. Wooten* (1996) 44 Cal.App.4th 1834, 1848 [claim of right].) Our Supreme Court has explained that "'. . . a bona fide belief, even though mistakenly held, that one has a right or claim to the property negates felonious intent. [Citations.] A belief that the property taken belongs to the taker [citations], . . . is sufficient to preclude felonious intent. Felonious intent exists only if the actor intends to take the property of another without believing in good faith that he has a right or claim to it. [Citation.]'" (*People v. Barnett* (1998) 17 Cal.4th 1044, 1143 (*Barnett*).) The same reasoning applies where the defendant takes property under the mistaken belief that the property has been abandoned. (*People v. Russell* (2006) 144 Cal.App.4th 1415, 1426–1427 (*Russell*), superseded on other grounds as stated in *People v. Lawson* (2013) 215 Cal.App.4th 108, 118; *People v. Navarro* (1979) 99 Cal.App.3d Supp. 1, 10–11.) The defendant's belief that the property was abandoned must be in good faith, yet need not be objectively reasonable. (*People v. Reyes* (1997) 52 Cal.App.4th 975, 984 & fn. 6; *Russell,* at pp. 1425–1426.)

A defendant is entitled to have the jury instructed on these defenses where there is substantial evidence to support them. (*People v. Tufunga* (1999) 21 Cal.4th 935, 944; *Russell, supra*, 144 Cal.App.4th at pp. 1427, 1429.) In this context, substantial evidence means "evidence sufficient for a reasonable jury to find in favor of the defendant." (*People v. Salas* (2006) 37 Cal.4th 967, 982.) "In determining whether the evidence is sufficient to warrant a jury instruction, the trial court does not determine the credibility of the defense evidence, but only whether 'there was evidence which, if believed by the jury, was sufficient to raise a reasonable doubt.' [Citations.]" (*Id.* at pp. 982-983.) The instructions need not be given "where the supporting evidence is minimal

8

and insubstantial." (*Barnett, supra*, 17 Cal.4th at p. 1045.) Any doubt concerning the sufficiency of the evidence should be resolved in favor of the accused. (*Ibid.*)

Here, substantial evidence supported instructions on mistake of fact and claim of right. In finding to the contrary, the trial court reasoned that appellants' statements on the subject were "contradictory" because "[o]ne time they say it's trash, then they admit they know it's an AC coil." This is not a valid reason for refusing the instructions. The issue is whether appellants had a good faith belief the coil had been abandoned as trash, and not whether they actually knew it was something of value. "As the saying goes, one person's trash is another person's treasure." (*People v. Tarris* (2009) 180 Cal.App.4th 612, 621.) Appellants told Deputy McNutt they found the AC coil on the curb and thought it had been abandoned as trash. Although appellants' initial claim that they did not know what the AC coil was may have supported an inference of guilt, it did not compel such an inference. Appellants' credibility on this point was an issue for the jury, not the court. (See *Russell, supra*, 144 Cal.App.4th at p. 1430.)

*Russell* supports our conclusion that appellants were entitled to the requested instructions. The defendant in that case took an old motorcycle that was parked outside a motorcycle repair shop. The defendant testified that he believed the motorcycle had been abandoned based on its condition, the fact that it was parked near a fenced area containing trash bins, and his belief that the repair shop put all of its motorcycles in the shop after closing. (*Russell, supra,* 144 Cal.App.4th at pp. 1421– 1422.) In appealing his conviction for receiving stolen property, the defendant argued the trial court had prejudicially erred in failing to instruct the jury on mistake of fact and claim of right. The Court of Appeal agreed and accordingly reversed the conviction. The court reasoned that there was substantial evidence from which the jury could have inferred the defendant believed the motorcycle had been abandoned, including the defendant's own consistent testimony to that effect, the condition and location of the motorcycle when it was taken, and the fact the defendant had acted as though he was entitled to possess the motorcycle. (*Id.* at pp. 1430–1431.)

9

Substantial evidence supporting instructions on mistake of fact and claim of right was similarly present here. It is undisputed the AC coil was "smashed" to the point of destruction. It is also common knowledge that people sometimes leave abandoned items on their curb with the hope that someone will take them. Deputy McNutt himself acknowledged that people drove through the neighborhood all day looking for abandoned items to recycle. Moreover, appellants took the AC coil openly and in broad daylight. They made no attempt to conceal what they were doing and gave a plausible explanation for their actions. In light of this evidence, the jury could have inferred that appellants had a good faith belief the coil was abandoned and thus lacked the specific intent to commit a theft. (*Russell, supra*, 144 Cal.App.4th at p. 1430.)

We also conclude the instructional error was prejudicial. The court's error in failing to instruct on mistake of fact is reviewed under the standard set forth in *People v. Watson* (1956) 46 Cal.2d 818, 836 (*Watson*). (*Russell, supra*, 144 Cal.App.4th at p. 1431.) Although our Supreme Court has yet to decide which standard applies to errors in refusing to instruct on claim of right, courts have consistently applied the *Watson* standard to similar types of errors. (See *ibid.*, and cases cited therein.) We thus apply that standard here. (*Ibid.*)

Accordingly, we must decide whether it is reasonably probable that but for the court's instructional error, appellant would have achieved a more favorable result. (*Watson, supra*, 46 Cal.2d at p. 836.) "Appellate review under *Watson* 'focuses not on what a reasonable jury *could* do, but what such a jury is *likely* to have done in the absence of the error under consideration. In making that evaluation, an appellate court may consider, among other things, whether the evidence supporting the existing judgment is so *relatively* strong, and the evidence supporting a different outcome is so *comparatively* weak, that there is no reasonable probability the error of which the defendant complains affected the result.' [Citation.] 'There is a reasonable probability of a more favorable result within the meaning of *Watson* when there exists "at least such an equal balance of reasonable probabilities as to leave the court in serious doubt as to whether the error affected the result."' [Citations.]" (*Russell, supra*, 144 Cal.App.4th at p. 1432.)

10

"Since the defenses at issue negate one of the elements of the offense, [appellants] needed only to raise a reasonable doubt regarding the existence of that element. [Citation.]" (*Russell, supra*, 144 Cal.App.4th at p. 1433.) Here, the court failed to instruct the jury that a good faith belief the AC coil had been abandoned would negate the knowledge element of the offense and thus compel a finding of not guilty. Here, as in *Russell,* "[t]hese instructions would have clarified the knowledge element by ensuring that the jury understood that a good faith belief, even an unreasonable good faith belief, would negate one of the elements of the offense. The instructions also would have drawn the jury's attention to facts that could raise a reasonable doubt about [appellants'] guilt. In our view, instructions on the applicable defenses would have been more valuable to the jury than instructions regarding the elements of the offense plus attorney argument that the prosecution had not proven the knowledge element because [appellants] believed the [AC coil] had been abandoned. When the court instructs on the law, it provides a framework for the jury's analysis and judicial recognition of the applicable defenses." (*Ibid.*)

The People contend the evidence of appellants' guilt is strong. But the evidence pointing away from guilt is adequate to warrant the requested instructions. As we have noted, appellants did not attempt to conceal their actions and described a scenario indicative of good faith. Moreover, in acquitting appellants of vandalism the jury apparently had a reasonable doubt that appellants took the coil from the AC unit, rather than finding it on the curb. Had the jury been instructed that appellants were not guilty of theft if they had a good faith belief the coil was abandoned, even if that belief was unreasonable, it may also have found a reasonable doubt whether appellants had the requisite state of mind to commit the offense. Because there is "'. . . "at least such an equal balance of reasonable probabilities as to leave the court in serious doubt as to whether the error affected the result"'" (*Russell, supra*, 144 Cal.App.4th at p. 1432), reversal is required.

11

CONCLUSION AND DISPOSITION

We think it is clear that the trial court's refusal to instruct on mistake of fact and claim of right eviscerated the defense in this case. In so ruling, the court failed to secure the jury's understanding that appellants were not guilty if they had a good faith belief, even if unreasonable, that the AC coil had been abandoned. Moreover, the error undermines confidence in the jury's verdict and thus cannot be deemed harmless.

The judgments are reversed. In light of our conclusion concerning the value of the property appellants are charged with stealing, any retrial of the theft charge must be limited to the misdemeanor of petty theft (§§ 488, 490).

NOT TO BE PUBLISHED.


PERREN, J.

We concur:


GILBERT, P. J.


YEGAN, J.

12

Richard E. Naranjo, Judge

Superior Court County of Los Angeles

_____

Athena Shudde, under appointment by the Court of Appeal, for Appellant Roberts.

Kelly C. Martin, under appointment by the Court of Appeal, for Appellant Garcia.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, James William Bilderback II, Supervising Deputy Attorney General, Alene M. Games, Deputy Attorney General, for Respondent.