Filed 5/15/15  P. v. Aller CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Placer)

----

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | C076422 |
| v. | (Super. Ct. Nos. 62113279, 62119627) |
| HARRY CHARLES ALLER, JR., | |
| Defendant and Appellant. | |

A jury convicted defendant Harry Charles Aller, Jr., of grand theft and vandalism exceeding $10,000.  The jury also found true an enhancement allegation that the amount of the loss due to theft and vandalism was more than $65,000.  Defendant now contends (1) the trial court erroneously admitted hearsay evidence regarding the value of the property taken and damaged, and (2) there was insufficient evidence of grand theft or loss

1

exceeding $65,000, because the evidence pertained to replacement value, not fair market value.

We conclude (1) the challenged testimony was not hearsay, and (2) although there was insufficient evidence to support the conviction for grand theft, there was sufficient evidence to support a conviction for petty theft, and there was also sufficient evidence to support the enhancement.

We will modify the judgment to reduce defendant's conviction from grand theft to petty theft and affirm the judgment as modified.

BACKGROUND

Placer County Sheriff's deputies responded to a reported theft at Northern Video Systems. A Northern Video Systems employee had noticed that a padlock was missing from an exterior storage compartment on a utility vehicle. The employee reviewed security camera footage and noted that some cameras were not working. He went to the roof to investigate and found that the cameras had been removed or turned. He also discovered extensive damage to the heating and air conditioning units and the copper piping on the rooftop.

The employee determined that copper pipes connecting the heating and air conditioning units had been cut and taken. In addition, hundreds of feet of coaxial cable had been removed from rooftop security cameras; two security cameras had been removed and one camera redirected; two large commercial heating and air conditioning units had been gutted of copper wiring and aluminum; and a third heating and air conditioning unit had been damaged. There was a black ski mask on the roof of the building and an empty bag of chips near an access ladder. Subsequent DNA analysis of the ski mask revealed DNA matching defendant's sample.

Six days later, Placer County Sheriff's deputies responded to another call at Northern Video Systems. Two additional air conditioning units had been gutted of copper and aluminum; units had been disassembled or damaged and copper piping

2

removed; and a generator was also damaged. In all, several hundred feet of copper piping had been removed. Officers located another empty bag of chips, an open soda can, and additional food wrappers. The gates to the property had been locked with locks that did not belong to Northern Video Systems. Subsequent DNA analysis of the soda can revealed DNA matching defendant's sample.

Surveillance video from both incidents revealed a dark blue vehicle that looked like a Toyota 4Runner in the parking lot at night when no one should have been on the premises. Defendant, when arrested, admitted he had owned a blue Toyota 4Runner but had since sold it. Subsequent investigation also revealed that defendant had sold various metals to a recycling facility in North Sacramento around the time of the incidents.

The employee testified at trial. His job duties included management and maintenance of the building, including the air conditioners. He was familiar with the video cameras on the building and the cables used for those cameras. The employee said the cable was valued at approximately $100 for 1000 feet, and the cameras (including their lenses and housings) were conservatively valued at $160 each when new. He said the air conditioning units had to be replaced because they were beyond repair, and the three large air conditioning units each cost approximately $20,000 to replace. Six smaller units cost approximately $4,000 to $6,000 each to replace. He also estimated that between 300 to 500 feet of copper pipe was stolen. The employee approximated the total cost to replace the damaged units -- including replacing the copper piping with PVC piping and replacing the stolen camera -- as between $75,000 and $100,000. He could not find any receipts at the time of trial, but he recalled that the cost was in line with the estimates provided. He acknowledged the damage could have been less than $65,000, but he did not remember it being less than $65,000.

The jury found defendant guilty of grand theft (Pen. Code, § 487, subd. (a) -- count one)[1] and vandalism exceeding $10,000 (§ 594, subd. (b)(1) -- count two), and found true an allegation that the value of the loss due to theft and vandalism was more than $65,000 (§ 12022.6, subd. (a)). The trial court suspended imposition of sentence and placed defendant on probation for four years.

DISCUSSION

I

Defendant contends the trial court erroneously admitted hearsay evidence regarding the value of the property taken and damaged. Specifically, defendant argues the employee's testimony regarding the amount of damage was inadmissible hearsay because the employee was relying on estimates prepared by other people for insurance purposes.

"It is well established that the owner of property may testify as to its value. [Citation.] It is also the law that having expressed an opinion as to the value of his property, the owner should be permitted to give his reasons for such opinion, since it is the general rule that an opinion is worth no more than the reasons on which it is based. [Citations.] However, '[in] stating his opinion as to the value of property, the owner is bound by the same rules of admissibility of evidence as is any other witness.' [Citation.]" (*Kitchel v. Acree* (1963) 216 Cal.App.2d 119, 124.) Thus, hearsay evidence, i.e., "evidence of a statement that was made other than by a witness while testifying at the hearing and that is offered to prove the truth of the matter stated," is not admissible, unless it falls within an exception. (Evid. Code, § 1200, subds. (a), (b).) For example, when stating the reason for his opinion as to the value of property, an owner may not rely on an estimate from a nontestifying third party. (*Kitchel,* at p. 125; see also *Garfinkle v.*

---

[1] Undesignated statutory references are to the Penal Code.

4

*Montgomery* (1952) 113 Cal.App.2d 149, 158-159 [testimony regarding cost of repairs that is based solely on an estimate provided by a nonwitness is "pure hearsay"].) However, where a witness has actually incurred or discharged a liability for repairs, he may testify as to that amount, and documents that might otherwise be hearsay, such as "invoices, bills, and receipts for repairs," may be admitted to corroborate the testimony. (*Pacific Gas & E. Co. v. G.W. Thomas Drayage etc. Co.* (1968) 69 Cal.2d 33, 42-43; see also *Jones v. Dumrichob* (1998) 63 Cal.App.4th 1258, 1267-1268.)

Here, the People contend the employee's testimony about the cost to replace the air conditioning units and to perform other repairs necessitated by the theft and vandalism was not hearsay because the employee had personal knowledge of the amount incurred. We agree that the testimony was not hearsay.

When the prosecutor asked the employee for "the general approximate value of the cost to replace [an air conditioning unit]," defense counsel objected based on a lack of foundation and hearsay. The trial court overruled the objection, noting counsel was "trying to lay the foundation." The employee testified he knew the cost to replace the units because he researched and obtained three quotes to replace the units, he talked to the people who replaced the units, and he managed the installation of the replacement units. The employee added that although he was unable to find the receipts for the work, he knew that the "total cost was in line with the estimates." Because the employee had personal knowledge of the estimates and also had personal knowledge that the total cost was in line with the estimates, his testimony was not hearsay and it was not error for the trial court to permit his testimony.

II

Defendant also contends there was insufficient evidence of grand theft or loss exceeding $65,000, because the evidence pertained to replacement value, not fair market value.

5

In reviewing for sufficiency of the evidence, we review the record in the light most favorable to the judgment to determine whether there is substantial evidence (evidence that is reasonable, credible, and of solid value) upon which a reasonable trier of fact could find defendant guilty beyond a reasonable doubt. (*People v. Osband* (1996) 13 Cal.4th 622, 690.) We apply the same standard regarding the sufficiency of the evidence to support a sentencing enhancement. (*People v. Williams* (2013) 218 Cal.App.4th 1038, 1067.)

A

Theft is divided into two categories: grand theft and petty theft. (§ 486.) Grand theft involves taking personal property with a "reasonable and fair market value" exceeding $950. (§§ 484, 487, subd. (a).) " 'Fair market value' means the highest price obtainable in the market place rather than the lowest price or the average price." (*People v. Pena* (1977) 68 Cal.App.3d 100, 104.) The value is measured at the time and place of the theft. (*Id.* at pp. 102-104.) But where "the property has a unique or restricted use and an extremely limited market," fair market value is synonymous with replacement value. (*People v. Renfro* (1967) 250 Cal.App.2d 921, 924.) "Otherwise, valuable property rights in certain kinds of property vitally needed in industry would be seriously jeopardized by the mere fact that once stolen the only remaining use for such property, and hence the only market therefor, is as 'salvage.' " (*Id.* at p. 924.)

We assume for the purposes of this analysis that the metal components stolen from the rooftop air conditioning units have a restricted use and limited market, and that the People could establish the fair market value using the replacement value. (See *People v. Renfro*, *supra*, 250 Cal.App.2d at p. 924.) Even so, there is no evidence establishing the cost to replace those particular metal components taken from the air conditioning units.

Rather, the evidence adduced at trial was that the aggregate cost to replace all the damaged air conditioning units and to replace the copper pipe with PVC pipe was $75,000 to $100,000, including the installation costs. There was also evidence that three

6

large air conditioning units cost $20,000 each to replace, and six smaller air conditioning units cost $4,000 to $6,000 each to replace. In addition, there was evidence that a stolen camera had a value of $40 used or $160 new, and the coaxial cable was valued at $100 for 1000 feet. But there was no specific evidence of the cost to replace the metal components taken from the air conditioning units.

The People contend that defendant "effectively stole" the air conditioning units by gutting them. We disagree. Defendant damaged the air conditioning units, and he stole components from them. But the replacement or market value of those stolen components was not presented at trial.

There was also no specific evidence regarding the replacement value or fair market value of the stolen copper pipe. Even if we could discern a specific replacement value for the replacement pipe, that value would be for the cost of the PVC pipe that replaced the copper pipe, and the value would include the cost of installation, which is not to be included in the calculation of fair market value. (*People v. Simpson* (1938) 26 Cal.App.2d 223, 229.)

Accordingly, we cannot determine the fair market value of the metal components or the stolen copper pipe. The stolen items for which we have evidence of fair market value do not have values totaling $950 or more, and thus do not reach the threshold for grand theft. The fair market value of the camera was between $40 and $160. The fair market value of the coaxial cable was less than $100. Even if we view these amounts generously, the value of the stolen property would total $260. The value of the stolen metal components and the stolen copper pipe may well have been much more, but that is not reflected in the record.

There is insufficient evidence to support the conviction for grand theft. However, the evidence supports the jury's verdict that defendant committed theft. We will modify the judgment to reduce defendant's conviction on count one to petty theft.

7

B

Section 12022.6 provides that "[w]hen any person takes, damages, or destroys any property in the commission or attempted commission of a felony, with the intent to cause that taking, damage, or destruction," and "the loss exceeds sixty-five thousand dollars ($65,000), the court . . . shall impose an additional term of one year." (§ 12022.6, subd. (a)(1).) Where the defendant is accused of "multiple charges of taking, damage, or destruction," this additional term "may be imposed if the aggregate losses to the victims from all felonies exceed [the statutory amount] and arise from a common scheme or plan." (§ 12022.6, subd. (b).) This enhancement applies regardless of whether the victims' losses are the result of theft, vandalism, or both. (See *People v. Evans* (2013) 215 Cal.App.4th 242, 253 [recognizing victims' aggregated losses from theft, receiving stolen property, and vandalism].) Here, because we have reduced defendant's grand theft conviction to a misdemeanor petty theft conviction, we consider only the loss resulting from defendant's felony vandalism.

For the purposes of determining whether the threshold value of $65,000 has been reached, the calculation is not limited to the fair market value set forth in section 484; rather the focus "is on what the victim lost, not what the defendant gained." (*People v. Beaver* (2010) 186 Cal.App.4th 107, 118.) Thus, in determining whether Northern Video Systems sustained a loss exceeding $65,000, it was appropriate to consider the replacement value of the ruined air conditioning units, which by itself exceeds $65,000 (three times $20,000 plus six times $4,000 is $84,000), and the cost of replacing the remaining damaged (but not stolen) copper pipe with PVC pipe. Thus, the evidence supports the jury's conclusion that Northern Video Systems sustained an aggregate loss exceeding $65,000. Substantial evidence supports the sentencing enhancement.

DISPOSITION

The judgment is modified to reduce defendant's conviction on count one from grand theft to petty theft. As modified, the judgment is affirmed. The trial court is

8

directed to prepare an amended order granting probation and judgment for monetary penalties reflecting the judgment as modified.

     MAURO     , J.

We concur:

     HULL     , Acting P. J.

     DUARTE     , J.

9