Filed 11/12/20

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>    v.<br><br>KENNETH A. GRANT,<br><br>        Defendant and Appellant. | D076576<br><br><br>(Super. Ct. No. SCS307603) |

APPEAL from a judgment of the Superior Court of San Diego County, Dwayne K. Moring, Judge.  Affirmed in part as modified, reversed in part, and remanded for resentencing.

Sheila O'Connor, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Melissa Mandel and Collette C. Cavalier, Deputy Attorneys General, for Plaintiff and Respondent.


Defendant Kenneth Grant admittedly stole merchandise from a Wilsons Leather outlet store.  The store sells everything at a discount, determined by applying varying discount percentages to a "comparable value"

the store displays on tags attached to each product. At trial, the prosecution introduced evidence showing that the cumulative comparable values of the stolen merchandise exceeded the $950 felony theft threshold. However, the prosecution introduced (1) no evidence establishing that the comparable values represented the merchandise's actual fair market values, and (2) evidence of actual sales prices for only a few of the stolen products (totaling about $265). Presumably relying on the comparable values, the jury found the value of the stolen merchandise exceeded $950, and convicted Grant of grand theft (Pen. Code, § 487, subd. (a))[1] and burglary (§ 459).[2] The trial court sentenced him to three years in local custody.

On appeal, Grant contends his grand theft conviction must be reduced to petty theft, and his burglary conviction must be reversed, because (1) the trial court erroneously instructed the jury regarding the definition of fair market value; (2) the trial court failed to instruct the jury regarding the distinction between burglary and misdemeanor shoplifting; and (3) substantial evidence does not support the finding that the value of the stolen merchandise exceeded $950.

Even if the jury had been properly instructed—an issue we need not, and do not, decide—we conclude its finding regarding the fair market value of the stolen merchandise is not supported by substantial evidence. Accordingly, we reduce Grant's grand theft conviction to petty theft, reverse his burglary conviction, and remand for resentencing.

---

[1]     Further undesignated statutory references are to the Penal Code.

[2]     The jury also found Grant guilty of misdemeanor battery (§ 242) for shoving a store employee while fleeing. The battery conviction is not at issue in this appeal.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On March 25, 2019, about one hour before closing time, Grant entered the Wilsons Leather outlet store at the Las Americas outlet shopping mall in San Ysidro. "[E]verything [at the mall] is discounted, [and] nothing is sold [at] full value." Grant put on a Cole Haan jacket that was for sale, then filled shopping bags with seven pairs of store-brand gloves, four Karl Lagerfeld backpacks, and two Karl Lagerfeld crossbody purses.

The assistant store manager, Pamela, heard Grant's shopping bags rustling and saw him filling them with merchandise. She told a sales associate to call mall security.

Grant walked quickly toward the front door, where Pamela and the sales associate were standing. When Pamela told Grant he needed to either leave the merchandise or pay for it, Grant continued out the door and gave Pamela a "little shove" with the bags to move her out of the way. The sales associate took a picture of Grant with her cellphone as he fled the mall.

The employees showed the cellphone picture to a mall security guard, who recognized Grant from prior encounters with him. Pamela called the police, and officers responded a few hours later, after the store had closed and all employees had left. An officer returned two days later, spoke with Pamela, and took a report. Using the "comparable value" displayed on the tag attached to each stolen item (rather than the discounted price at which the store actually sold each item), Pamela reported that Grant stole more than $1,000 worth of property. Grant was apprehended a few days later at the San Ysidro port of entry.

Grant admitted at trial that he stole items from the Wilsons Leather outlet, but he disputed the quantities, pricing, and whether he had shoved Pamela. Specifically, Grant testified that stealing from stores is "what [he]

3

do[es] for a living," so he is always on his "A-plus game" and is careful not to exceed the $950 felony threshold and "never touch[es] anybody, because [then] it's a robbery."

Grant was charged with one count each of grand theft (§ 487, subd. (a)), burglary (§ 459), and battery (§ 242).[3]  After deliberating less than two hours, the jury found him guilty as charged.  The trial court sentenced Grant to three years in local custody.

## II.  DISCUSSION

Grant contends the jury's finding that he stole more than $950 worth of merchandise—a finding on which both his grand theft and burglary convictions depend—is not supported by substantial evidence because the prosecution relied on the "comparable value" Wilsons Leather displayed on the tag attached to each stolen item without introducing any evidence to establish that the comparable values reflect the stolen merchandise's actual fair market values.  We agree.

### A.  *Background*

Wilsons Leather's assistant manager, Pamela, testified at trial about the pricing of the merchandise Grant stole.  She explained generally that every product has a "full price that Wilsons Leather discounts" by varying percentages.  Tags attached to the merchandise display a "comparable value." The discounted sales price that customers actually pay is determined by applying varying discount percentages—indicated on display racks and shelves—to the "comparable value" displayed on the tag attached to an item.

---

3    Because we are resolving this appeal on substantial evidence grounds, we need not address the distinctions between the various theft offenses, which our high court recently discussed in *People v. Lopez* (2020) 9 Cal.5th 254 (*Lopez*).

4

The discount percentages change every Wednesday, and the store does not track past discount percentages.

The police officer who responded on the night of the theft call, Officer Jasmin Wong, returned to the store two days later (a Wednesday) and took pictures of products virtually identical to those that were stolen and their tags. Each tag appears to consist of a manufacturer's hang tag, on which Wilsons Leather placed a sticker displaying the "comparable value" and other information—but no actual sales price. The pictures were admitted as trial exhibits.

Regarding the stolen Cole Haan jacket, Pamela testified the tag displayed a comparable value of $350. A display sign on the sales rack also indicated a comparable value of $350, and a discounted sale price of $89.99 (about a 75 percent discount).

The tag corresponding to the seven stolen pairs of store-brand gloves reflected a comparable value of $60 each. Pamela testified that "a typical price point for those $60 gloves" would be $25 or $34.99, and she "think[s]" it was $25 on the day of the theft. Officer Wong documented the sale price as $25 in her report.

Turning to the Karl Lagerfeld products, the tags corresponding to the four stolen backpacks reflected comparable values of $168, $168, $188, and $198. The tag on the backpack with the $188 comparable value also reflected an "MSRP" of $188, but Pamela testified she did not "know what MSRP stands for." The tag corresponding to the two stolen crossbody purses reflected comparable values of $228.

Pamela testified Karl Lagerfeld is the most expensive brand that Wilsons Leather sells, but she did not know what discount percentages applied to the stolen merchandise on the day of the theft. A picture of a Karl

5

Lagerfeld display cabinet at the store indicated a 60 percent discount rate. Pamela confirmed Officer Wong took this picture before the weekly price change, and that the discount sign in the picture was in the same place as the discount sign applicable to the stolen backpacks and purses. Nevertheless, she claimed the 60 percent discount rate did not apply to the stolen merchandise. She said 40 percent is a more typical discount rate at the store, but she "d[id]n't remember on March 25th what . . . the discount or the sale price was for [the] Karl Lagerfeld bags." Pamela acknowledged she did not "have any experience selling Karl Lagerfeld outside of Wilsons Leather."

During closing arguments, the prosecutor maintained Grant was guilty of grand theft and burglary (instead of petty theft) because the comparable values displayed on the stolen merchandise's tags cumulatively exceeded $950. Defense counsel essentially conceded Grant had committed petty theft, but urged the jury not to use the comparable value because "[w]e know nothing about it"—"what is it . . . compare[d] . . . to?"

The jury was instructed that to find Grant guilty of grand theft and burglary, it had to find that the prosecutor proved beyond a reasonable doubt that the fair market value of the stolen merchandise exceeded $950; otherwise, the jury could convict Grant only of petty theft as a lesser included offense of grand theft. After deliberating less than two hours, the jury found Grant guilty of grand theft and burglary.

## B. *Legal Principles*

To establish that Grant committed either grand theft or burglary, the prosecution bore the burden of proving he stole property valued at more than $950. (§§ 484, 490.2, 459, 459.5; *People v. Valenzuela* (2019) 7 Cal.5th 415, 420; *Lopez, supra*, 9 Cal.5th 254 at p. 265; *People v. Jennings* (2019) 42 Cal.App.5th 664, 670.)

6

"In determining the value of the property obtained, for the purposes of [theft offenses], the reasonable and fair market value shall be the test." (§ 484; see *People v. Romanowski* (2017) 2 Cal.5th 903, 914 (*Romanowski*) ["section 484 is a definitional section" that "sets the ground rules for how . . . [s]pecific theft crimes . . . set out in a variety of other sections" of the Penal Code "are [to be] adjudicated"]; *People v. Seals* (2017) 14 Cal.App.5th 1210, 1215.)

The fair market value of an item is "the highest price obtainable in the market place" as between "a willing buyer and a willing seller, neither of whom is forced to act." (*People v. Pena* (1977) 68 Cal.App.3d 100, 103 (*Pena*); see *Romanowski, supra*, 2 Cal.5th at p. 915.) "Put another way, 'fair market value' means the highest price obtainable in the market place rather than the lowest price or the average price." (*Pena*, at p. 104.) Fair market value is "not the value of the property to any particular individual." (*People v. Lizarraga* (1954) 122 Cal.App.2d 436, 438 (*Lizarraga*).)

Fair market value may be established by opinion or circumstantial evidence. (See *People v. Zamudio* (2008) 43 Cal.4th 327, 357-358; *Lizarraga, supra*, 122 Cal.App.2d at p. 437 [testimony of experienced furriers sufficient to establish value of stolen fur pieces]; *People v. Williams* (1959) 169 Cal.App.2d 400, 403 (*Williams*) [testimony by experienced salesclerk sufficient to establish value of stolen suits].) "[T]he price charged by a retail store from which merchandise is stolen" is also "sufficient to establish the value of the merchandise," absent proof to the contrary. (*People v. Tijerina* (1969) 1 Cal.3d 41, 45 (*Tijerina*).) Jurors may also "rely on their common knowledge" in determining the value of an item. (*People v. Ortiz* (2012) 208 Cal.App.4th 1354, 1366 (*Ortiz*) ["inference by the jurors was not mere

7

speculation, but was instead reasonably based on common knowledge regarding the value of late-model BMW's"].)

" 'When considering a challenge to the sufficiency of the evidence to support a conviction, we review the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence—that is, evidence that is reasonable, credible, and of solid value—from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. [Citation.] We presume in support of the judgment the existence of every fact the trier of fact reasonably could infer from the evidence. [Citation.]" (*People v. Covarrubias* (2016) 1 Cal.5th 838, 890.)

"Substantial evidence includes circumstantial evidence and any reasonable inferences drawn from that evidence." (*In re Michael D.* (2002) 100 Cal.App.4th 115, 126 (*Michael D.*).) However, "[a] reasonable inference may not be based on suspicion alone, or on imagination, speculation, supposition, surmise, conjecture, or guesswork; a finding of fact must be an inference drawn from evidence rather than a mere speculation as to probabilities without evidence." (*People v. Rekte* (2015) 232 Cal.App.4th 1237, 1247 (*Rekte*).) " ' "By definition, 'substantial evidence' requires *evidence* and not mere speculation." ' " (*People v. Ramon* (2009) 175 Cal.App.4th 843, 851.)

### C. *Analysis*

In light of Wilsons Leather's pricing structure—under which "everything . . . is discounted" from a displayed "comparable value" and "nothing is sold [at] full price"—we agree with Grant that substantial evidence does not support the jury's finding that the fair market value of the merchandise he stole exceeded $950.

8

Most fundamentally, although the prosecution introduced photographic and testimonial evidence establishing the comparable values Wilsons Leather displayed on the tags attached to the stolen merchandise, the prosecution introduced *no evidence* establishing that those comparable values reflect the merchandise's fair market values. The pictures of the products' tags, themselves, did nothing more than show the displayed comparable values. And the assistant manager (Pamela) established only that those comparable values were *not* the prices that Wilsons Leather actually charged. The fact that she testified one of the representative tags featured both a comparable value and an MSRP is of no moment in light of her testimony that she did not know the meaning of MSRP. Moreover, because the comparable value and MSRP were the same, and because Wilsons Leather sells nothing at its comparable value, it necessarily follows that Wilsons Leather also did not sell this item at MSRP.

Nor did Pamela offer any opinion about the merchandise's fair market value. To the contrary, she expressly stated she did not "have any experience selling Karl Lagerfeld [backpacks or crossbody purses] outside of Wilsons Leather." In this way, her testimony and expertise differed from those of the experienced furriers in *Lizarraga*, *supra*, 122 Cal.App.2d at page 437, and the experienced suit salesclerk in *Williams*, *supra*, 169 Cal.App.2d at page 403, whose testimony was sufficient to establish the fair market value of stolen merchandise in those cases.

To be sure, "circumstantial evidence and any reasonable inferences drawn from that evidence" may constitute substantial evidence. (*Michael D.*, *supra*, 100 Cal.App.4th at p. 126.) But the record before us contains no *evidence* from which the jury could reasonably have inferred that the merchandise's comparable values reflected their fair market values. (*Rekte*,

9

*supra*, 232 Cal.App.4th at p. 1247 ["a finding of fact must be an inference drawn from evidence rather than a mere speculation as to probabilities without evidence"].) This is particularly relevant in the context of an outlet store that sells everything at a discount.[4]

Defense counsel's query during closing argument— "what is [the comparable value] . . . compare[d] . . . to?"—illustrates the prosecution's evidentiary shortcoming. Was the stolen Wilsons Leather merchandise identical to merchandise sold at traditional retail stores at prices equal to Wilsons Leather's assigned comparable values? Or was the stolen merchandise of lesser quality (e.g., made from a lower grade of leather, or

---

[4] Comparative-price advertising has been the subject of much legislation, regulation, and litigation because of concerns that advertised comparative prices do not correspond to prices actually charged for truly comparable products. (See, e.g., Bus. & Prof. Code, § 17501 [prohibiting misleading comparisons to "former price[s]"]; Cal. Code Regs., tit. 4, § 1301 [noting that regulated price comparisons often uses phrases such as " 'formerly -,' 'regularly -,' 'usually -,' 'originally -,' 'reduced from _____,' 'was _____ now _____,' [and] '____% off.' "]; 16 C.F.R. § 233.2(c) [advising that "the price advertised as being the price of comparable merchandise [should] not exceed the price at which such merchandise is being offered by representative retail outlets in the area"]; *Shaulis v. Nordstrom, Inc.* (1st Cir. 2017) 865 F.3d 1, 5 [consumer class action alleging that "although price tags on Nordstrom Rack products contain both a sale price and a 'Compare At' price that purports to represent a bona fide price at which Nordstrom (or some other retailer) formerly sold those products, Nordstrom, in reality, sells goods manufactured by designers for exclusive sale at its Nordstrom Rack stores, which means that such items were never sold—or intended to be sold—at the 'Compare At' prices advertised on the price tags."]; *John v. AM Retail Group, Inc.* (S.D.Cal., Mar. 20, 2018, No. 17CV727-JAH (BGS)) 2018 WL 1400718, at *2 [consumer class action alleging that a sign advertising a Wilsons Leather "wallet as having a 'Ticket' price of $60 and a 'Sale' price of $23.99" was misleading because "the particular wallet . . . was not offered for sale at the 'Ticket' price of $60.00 at any store in California, within ninety days before Plaintiff's purchase."].)

10

blemished) and intended for sale exclusively at a discount outlet store? If not identical, why is the higher quality merchandise's fair market value reflective of the stolen merchandise's comparable value? If identical, was the merchandise *ever* offered for sale—let alone *actually sold—by anyone* at a price equal to Wilsons Leather's assigned comparable value? Or was the comparable value merely illusory, intended to give consumers the impression they were getting a bargain? The evidence the prosecution introduced did not address any of these questions. Without answers to these types of questions (e.g., by Pamela, another Wilsons Leather employee, or a qualified industry expert), the jury could only have *speculated* that the comparable values Wilsons Leather displayed on the tags attached to the stolen merchandise reflected their fair market values.

Of course, jurors may generally use their common knowledge to determine the fair market value of property. But the only case the Attorney General cited to support this proposition involved jurors' common knowledge that a two-year-old BMW generally has substantial value. (See *Ortiz*, *supra*, 208 Cal.App.4th at pp. 1359, 1366.)[5] Here, however, where the key issue at trial was the precise value of particular merchandise, we are not satisfied that the jurors' common knowledge provided the required precision.

This is not to say the jury was required to use Wilsons Leather's discounted sales prices. (See *Lizarraga*, 122 Cal.App.2d at p. 438 [fair market value is "not the value of the property to any particular individual"]; *Pena*, *supra*, 68 Cal.App.3d at p. 103 ["If some stores would underprice the

_____

[5] The issue in *Ortiz* was not the precise determination of the BMW's fair market value but, rather, whether the vehicle had sufficient value that the jury reasonably could infer the defendants committed a kidnapping with the intent to take the BMW. (*Ortiz*, *supra*, 208 Cal.App.4th at pp. 1365-1366.)

11

items or would give them away that would not be representative of the fair market value."]; *Tijerina*, *supra*, 1 Cal.3d at p. 45 [ "the price charged by a retail store from which merchandise is stolen" is "sufficient to establish the value of the merchandise," absent proof to the contrary].)  Notably, except for the stolen jacket (about $90) and gloves ($175 for seven pairs), the prosecution introduced no evidence establishing the discounted sales prices for the other stolen merchandise.  Pamela expressly testified she was unaware of the discount percentages that applied to the stolen Karl Lagerfeld bags on the day of the theft, despite acknowledging a picture of the display shelves had a sign indicating a 60 percent discount rate.  But if the prosecution wished to establish that the stolen products' fair market values were something other than the prices Wilsons Leather actually charged, it was incumbent upon the prosecution to introduce evidence establishing those values.  It failed to do so.

Because substantial evidence does not support the jury's finding that Grant stole property valued at more than $950, substantial evidence does not support his convictions for grand theft or burglary.  Accordingly, we modify Grant's conviction for grand theft to reflect a conviction for petty theft, and reverse his conviction for burglary.  (See §§ 1181(6), 1260; *People v. Navarro* (2007) 40 Cal.4th 668, 671 ["an appellate court that finds that insufficient evidence supports the conviction for a greater offense may, in lieu of granting a new trial, modify the judgment of conviction to reflect a conviction for a lesser included offense"]; *People v. Simpson* (1938) 26 Cal.App.2d 223, 229-230 [reducing grand theft to petty theft].)

### III. DISPOSITION

The conviction on count 2 (burglary) is reversed. The conviction on count 1 (grand theft) is modified to reflect a conviction of petty theft, a misdemeanor. As modified, the judgment is affirmed as to count 1 (petty theft) and count 3 (battery). The matter is remanded to the trial court for resentencing.

HALLER, Acting P. J.

WE CONCUR:


O'ROURKE, J.


GUERRERO, J.